Judge Mills
delivered the opinion of the court.
Green Clay and Higgason Grubbs, filed their bill in the court below, stating, that James and Edmund Estill had entered into partnership for the purpose of taking up and securing lands on the 11th February, 1778: That on the 5th of July, 1781, for a valuable consideration, James Estill sold to William Hoy 700 acres, part of a pre-emption of 1000 acres granted to Stephen Handcock, and by Handcock conveyed to said Estill for, or in consideration of, discharging the expences, and “clearing out,” the settlement and pre emption of Handcock. That said James executed to said Hoy his bond, promising a conveyance, and put Hoy in the possession, and that Hoy shortly afterwards, in the same year, sold to John Tanner the same 700 acres, and executed his bond for a conveyance thereof, and that Tanner took possession of the land accordingly, and made large and valuable improvements, and on the 23d of November, 1785, Tanner sold the same land to the complainant, Clay, who took possession, and has occupied it ever since. That Hoy and James Estill are both dead, and no conveyance is made, and that the legal estate is in the heirs of James Estill. That since the death of Hoy, his heirs had constituted James French, and John South, as their agents, who, *498 intending to settle the controversey, assigned to Green Clay the bond of James Estill to Hoy, and that the heirs of Estill being notified of the assignment and a conveyance demanded, had refused. They then proceed to state an additional claim, as follows:-that the said James Estill, during his partnership with Samuel, contracted with Handbook to clear out his settlement and pre-emption, out of the several offices, and to pay the state price thereon, and make the said Handcock, a sufficient title to one half of the 1,400 acres, and Executed a bond to said Handcock, for the conveyance of said moiety, which bond was assigned by Handcock to Grubbs, the complainant, who sold apart of said 700 acres to a certain James Martin, who departed this life, leaving said land to his two sons, Hudson and Nathan Martin, from whom Green Clay had purchased one hundred acres, the title of the whole remaining in the heirs of James Estill, which they refused to convey. To this bill they make the heirs of James Estill and Samuel Estill the sole defendants, and pray a conveyance of the whole 1,400 acres to each, according to their respective titles. A considerable number of terms afterwards, and after the bill had been taken for confessed against all the defendants except one, the complainants amended their bill, and suggested that the conveyance bond from William Hoy to Tanner was lost, and tendered proof of its existence & the payment of the consideration, and they also made the heirs of William Hoy defendants, & the complainant, Clay, prays a conveyance of the 700 acres purchased of Tanner, and 100 purchased of the Martins.
At a term or two subsequent to this amendment, the bill, on the motion of the complainants, is discontinued as to Higgason Grubbs, the complainant. Some time after this the heirs of Jas. Estill answer as to the 700 acres only, sold by their ancestor to Hoy, and admit the sale, the bond and payment of the consideration, and declare their readiness to convey to the complainant, Clay, or any other person to whom the court may decree a conveyance; but that they are advised, that French and South, as agents for Hoy’s heirs, have no authority to transfer to Clay the bond of their ancestor; many of said heirs of Hoy being feme coverts, and one of them an idiot or lunatic, as the complainants had admitted in the bill, and that such persons could not act by agent. Lawrence Flournoy, one of the defendants, who had married a female heir of Hoy, answered by a spe *499 cial committee, as an insane person, appointed by the circuit court, and Fanny Hoy, as a lunatic by her committee, and the rest of the heirs of Hoy for themselves, answered, denying and contesting almost every allegation of the bill and requiring proof They rely on the statute of frauds and perjuries as to parol sales, having denied the bonds, and also insist that the authority to French and South was void as to the feme covert and lunatics. But their whole answer is specially applied to the 700 acres alledged to be sold by James Estill to Hoy, and by Hoy to Tanner, and Tanner to Clay, and nothing is said about the share claimed by Clay, out of the other 700 acres purchased from the Martins. To the whole bill and amendment Samuel Estill demurred, and the court sustained his demurrer, whereupon, at the same time, the complainant, Clay, amended his bill, stating that the consideration given by Hoy to James Estill was a negro, and that Samuel Estill got the negro immediately, and sold him afterwards, having obtained him by reason of his interest in the purchase, and that by the terms of the partnership said Samuel was bound to make good James Estill’s contacts, and that he, the said Samuel, had in his own name entered two several treasury warrants upon the same land, by which he claimed it in his own right. That the reason said Samuel made these locations were, Samuel Handcock’s plats and certificates of settle ment and pre-emption were for some time lost, and that he made these entries on treasury warrants to secure the land; but that lately he had conceived the fraudulent purpose of disavowing, the partnership and holding the land in his own same. To this, or the original bill, Samuel Estill made no further answer. After the cause had stood in this situation for a considerable length of time, and after a change of venue was awarded therein, the complainant, Clay, made another amendment to his bill, in which he charges, that Tanner in making his purchase of Hoy, purchased 1,700 acres from Hoy, of which the 700 acres, half of Handcock’s settlement and pre-emption was a part, and that Tanner paid part of the consideration, and Hoy gave his bond to convey the whole 1,700 acres, being all Hoy held west of Tates Creek Road, and that for the residue of the price said Tanner executed his bonds to convey to Hoy 1,400 acres, William Cooper’s settlement and pre-emption—1,000 acres Thomas Luttrel’s pre-emption—500 acres part of John Luttrel’s pre-emption, and 500 acres in his *500 own name as assignee of W. Green. A copy of which bond he makes part of his bill, the original being filed in another court.—That Hoy had sold to Higgason Grubbs 1,000 acres of the land to be conveyed to, him by Tanner, and Grubbs had received compensation for it from Tanner, and that the residue was sold to Nathaniel Hart, whose heirs had received full compensation from Tanner, and that Hoy in his lifetime had conveyed the whole 1,700 acres, except the 700 acres part of Handcock’s pre-emption, to which he had not the legal estate. This amendment makes the heirs of Tanner defendants, and against some of them, as non residents, and others as unknown, order of publication was directed, which does not appear to have been executed. In this situation the cause was tried, and the court below decreed, that the heirs of James Estill should convey the whole pre-emption of Stephen Handcock, being 1,000 acres by the patent boundary, and that the defendants, the heirs of Hoy, should pay the costs, and nothing is said as to the remaining defendants. The errors assigned question this decree.
Merely naming persons def'ts. and issuing process does not in fact make them so, there must be an actual or constructive service of process.
It may appear from the foregoing account of the pleadings in this cause, somewhat singular, that the decree should extend to 1,000 acres by the patent boundaries, when the complainant, Clay, in the court below only claims in his bill and various amendments, 700 acres in one claim, and 100 in another. But upon looking into the exhibits in this cause, papers are found filed conducing to shew that the complainant below had extended his purchase from Tanner, indirectly through a Mr. Dozier and William Jones; and it has escaped the attention of the court below that these were not set up and relied upon in the pleadings. If no other objection existed for this cause, the decree could not be sustained. But we forbear to travel further into the merits of this controversy, as the errors assigned rely on the want of proper parties. The heirs of Tanner were necessary as to the purchase of 700 acres through him. And although they are named his defendants in an amended bill and publication directed agaisnt them, yet as this order was not published, it cannot be of greater validity than process of subpoena not executed. And as was decided by this court in the case of Bond vs. Hendricks, 1. Marsh. 592—the barely naming a party, and awarding process against him, will not make him a party in law, or authorise any proceedings against him.
But this is by no means the most objectionable lack of *501 parties in the suit. Clay and Grubbs first united in the bill, setting up two distinct purchases from James Estill—one of 700 acres from Estill to Hoy, and then through Tanner to Clay—the other a bond from James Estill to Handcock, and from the latter to Grubbs, for 700 acres—of which Clay claimed 100 acres purchased from Hudson and Nathan Martin, and that but part of a purchase made by their father from Grubbs. The discontinuing of the bill against Grubbs disabled the court from adjudicating upon any part of the contract which was executed to Handcock, because the whole contract was not before the court, and still the complainant, Clay, insists upon and receives a decree for one hundrǝd acres, apart of it, when it was absolutely necessary, according to well settled principles, that Handcock, Grubbs and the Martins should have been before the court, so that the whole contract might have been the subject of adjudication. But it is contended by the assignment of error that even then, relief could not have been granted, because that the complainant could not include two different contracts for specific execution in the same bill. This position we cannot admit. It is true we have been unable to discover much light upon this point from the authorities, and have, therefore, considered it chiefly upon the reason of the law and analogous principles. Equity abhors multiplicity of suits, and will blend, as much as can conveniently be done, to lessen their number. The chancellor can shape his decreeboth as to the relief to be given and the costs, so as to discriminate between the claims, and do complete justice between the parties on each one. One may be sustained, and the other failing in its equity may be destroyed. Even in a court of common law, where the rigidity of rule presents greater difficulty, numerous causes of action of the same species, and sometimes those of a different species may be joined in the same declaration, such as a count in trover and one in case, barely because the process and judgment is the same. Why then may not a complainant unite in his bill two contracts, between the same parties, touching the same subject matter for specific execution? If it can be done in any case, it is conceived it Would be proper in this. The two contracts were executed by each for a moiety of the same settlement and preemption, and each perhaps for an undivided interest. Of course the position of both must be fixed by metes and bounds, and their limits settled. The whole of *502 one of these contacts and part of the other is claimed by Clay. If he held the whole of both, no reason is perceived why he might not unite them in the same bill, and it follows then, that he ought to be allowed to include a part of both or either, and that when all the parties concerned are bro’t before the court, the whole contest may be settled. According to these principles then, the decree of the court below, instead of granting relief on the merits, ought to have dismissed the bill without prejudice, unless the complainant in a reasonable and convenient time fixed by the decree, should so amend his bill as to include the proper parties, and then by process or proceeding should bring them before the court, to enable the court to decide, finally, the whole matter of controversy. The decree of the court below, must, therefore, be reversed with costs, and the cause be remanded to that court for new proceedings, to be had not inconsistent with this opinion.
In a bill brought for a specific execution of a contract which had passed thro’ various hands, by assignment all the persons through whose hands it had passed must be parties. When all the proper parties are before the court a complainant may unite in one bill two distinct contracts relating to the same subject, and the chan sellor can modify his decree according to equity.
Hardin for appellant. Bibb for appellee.